## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GHL HOLDINGS, LLC et al.**                    **CIVIL ACTION**

**VERSUS**                                      **NO. 21-516**

**LEGEND MARINE GROUP et al.**                  **SECTION: "G"(5)**

### ORDER AND REASONS

This litigation arises from an alleged agreement between two dealers to sell motorhomes and motorboats to each other at discounted prices. Before the Court is Defendants Speedboats of Texas, LP, d/b/a Legend Marine Group ("Legend"), Land and Water Motorsports, LLC ("Land & Water"), and Greg Connell's ("Connell") (collectively, "Defendants") "Motion for Summary Judgment."[1] Plaintiffs GHL Holdings, LLC ("GHL") Dixie Motors, LLC ("Dixie Motors"), M.A. Guidry Holdings, LLC ("Guidry Holdings"), and Stephen L. Guidry, Jr. ("Guidry") (collectively, "Plaintiffs") oppose the motion.[2] For the reasons discussed in detail below, there are material facts in dispute as to the existence of an enforceable contract between the parties. Accordingly, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies Defendants' motion.

---

[1] Rec. Doc. 52.

[2] Rec. Doc. 57.

## I. Background

### A.    *Factual Background*

On March 12, 2021, Plaintiffs filed a Complaint against Defendants in this Court alleging that Defendants breached a contract in which the parties would sell and purchase motorhomes and motorboats from each other's dealerships at "dealer invoice cost."[3] In the Second Amended Complaint, Plaintiffs aver that Connell approached Guidry in September 2017 to purchase a motorhome from Guidry's dealership, Dixie Motors.[4] Plaintiffs assert that Guidry expressed an interest in purchasing a motorboat from Connell's dealership, Legend, at or around the same time.[5] Plaintiffs contend that Connell and Guidry agreed to sell each other, and/or their designated companies, boats and recreational vehicles at dealer invoice cost.[6]

Plaintiffs assert that Connell and Guidry orally agreed for each party to purchase products from the other's respective company at the dealer invoice cost, which is the price a dealer pays to the manufacturer of the motorhomes or motorboats to stock their dealerships.[7]   Plaintiffs aver that a November 4, 2017 email from Connell to Guidry, which suggests an agreement to sell at dealer invoice cost plus a $10,000 profit margin for the seller in each transaction, was subsequently supplanted by a later deal to charge merely the dealer invoice cost.[8] Plaintiffs aver that the parties structured the deal such that neither party would make a profit on any sale.[9] Plaintiffs assert that

---

[3] *See* Rec. Doc. 1 at 3–4.

[4] *Id.* at 3.

[5] *Id.* at 3–4.

[6] *Id.*

[7] *Id.* at 3–5; *see also* Rec. Docs. 16-1 & 16–2.

[8] Rec. Doc. 16 at 4.

[9] *Id.*

any conversation wherein the parties suggested that the seller obtain a $10,000.00 profit on any transaction "was a wash" and that Connell and Guidry "ultimately agreed that they would sell" at the dealer invoice cost.[10] Plaintiffs allege that this agreement governed four transactions.[11]

### 1.    Sale of the 2018 390 Sport Open Boat

Plaintiffs aver that pursuant to the agreement reached in late 2017 to early 2018, Connell and Guidry agreed to the sale of a 2018 390 Sport Open Boat ("2018 Boat") at the dealer invoice cost.[12] Plaintiffs allege that Guidry Holdings purchased the 2018 Boat from Legend.[13] Plaintiffs contend that Guidry is the sole owner of Guidry Holdings, while Connell is Chief Executive and Operating Officer of Legend.[14] Plaintiffs aver that Connell "again confirmed the parties contract and agreement via email"[15] on March 6, 2018, where Connell stated that he informed the manufacturer to "remove all incentives and hold backs from the invoice so that it will be the net number to you as we agreed."[16]

Plaintiffs allege that "Defendants made a profit on the sale [of the 2018 Boat] . . . in breach of the agreement between the parties thereby causing damages to the Plaintiffs."[17] Plaintiffs represent that the parties determined after the sale that Guidry paid an amount above the final

---

[10] *Id.*

[11] *Id.*at 3.

[12] *Id.*

[13] *Id.*

[14] *See id.* at 3–4.

[15] *Id.* at 4.

[16] Rec. Doc. 16-2.

[17] Rec. Doc. 16 at 4.

dealer invoice cost of the 2018 Boat.[18] Plaintiffs submit documentation indicating that Guidry was reimbursed for the amount he overpaid.[19]

### 2.     Sale of the 2019 Entegra Cornerstone Model 45W Motorhome

Plaintiffs allege that Dixie sold a 2019 Entegra Cornerstone Model 45W Motorhome ("2019 Entegra") to Connell's Montana limited liability corporation, Land & Water, in March 2018.[20] Plaintiffs assert that Connell acquired the 2019 Entegra at the "dealer's cost in the amount of $457,530.00."[21] Plaintiffs aver that Guidry supplied Connell with a copy of the actual final factory invoice from the manufacturer of the 2019 Entegra, indicating that the motorhome was sold at dealer invoice cost.[22] Plaintiffs argue that they "lost an approximate profit of $75,000.00 on a potential retail sale" on the 2019 Entegra "because of the foregoing agreement between the parties."[23]

### 3.     Sale of the 2020 Entegra Cornerstone Model 45W Motorhome

Plaintiffs aver that Connell and Land & Water approached Guidry again in early 2019 to purchase another motorhome from Dixie.[24] Plaintiffs contend that Guidry "expressed interest in buying another boat" from Legend at or around the same time.[25] Plaintiffs aver that "[t]he parties again mutually agreed that they would sell each other the designated products from their

---

[18] Rec. Doc. 57 at 3–4; *see also* Rec. Doc. 16-3.

[19] *See* Rec. Docs. 57-1 at 2; 57-5; 57-6.

[20] Rec. Doc. 16 at 5–6.

[21] *Id.* at 6.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 6.

[25] *Id.*

respective companies at dealer's cost."[26] Plaintiffs aver that Connell emailed Guidry on April 13, 2019, requesting "the same discount as last time," referring to the sale of the 2019 Entegra.[27] Plaintiffs allege that at the close of this transaction, Dixie sold a 2020 Entegra Cornerstone Model 45W Motorhome ("2020 Entegra") to Land & Water "at its dealer's cost in the amount of $466,330.00."[28] Plaintiffs assert that Guidry provided Connell with a final factory invoice from the manufacturer confirming that the deal complied with the oral arrangement.[29] Plaintiffs allege that they sustained an approximate loss of profit of $75,000.00 in potential retail value on the 2020 Entegra motorhome.[30]

### 4.    Sale of the 2021 390 Sport Open Boat

Plaintiffs allege that Guidry and GHL agreed to purchase a 2021 390 Sport Open Boat ("2021 Boat") from Connell and Legend in early 2020 pursuant to the same agreement.[31] Plaintiffs aver that on May 15, 2020, Guidry made a $20,000.00 deposit towards the purchase of the 2021 Boat.[32] Plaintiffs contend that Guidry "made a final payment of $676,512.24 for the 2021 [B]oat," at Legend and Connell's request on September 11, 2020.[33] Plaintiffs assert that Defendants assured them "that they would receive a manufacturer's final invoice showing

---

[26] *Id.*

[27] *Id.* at 8.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 7.

[31] *Id.*

[32] *Id.*

[33] *Id.*

dealer's cost, and that the parties would settle-up if Plaintiffs overpaid for the boat."[34] Plaintiffs assert that Guidry emailed Connell on both September 9 and 10, 2020, requesting a final factory invoice.[35]

Plaintiffs further aver that Defendants ignored Guidry's requests for the final factory invoice for several months.[36] Plaintiffs assert that they took delivery of the 2021 Boat sometime in October 2020 and continued to request a copy of the final factory invoice in the following weeks.[37] Plaintiffs assert that Connell engaged in conversations with Gregory A. Lala ("Lala"), Dixie's Chief Executive Officer, in late April or early May 2021 regarding Lala's individual purchase of a speedboat from Legend.[38] Plaintiffs contend that Connell admitted to Lala that the invoices submitted to Plaintiffs for the 2021 Boat "did not reflect the true [dealer factory] cost."[39] Plaintiffs further argue that Connell informed Lala that he did not disclose the fact that he "made a profit on [the 2021 Boat] contrary to their agreement" with Plaintiffs.[40] Plaintiffs assert that Connell did not disclose the amount Defendants profited in the sale of the 2021 Boat during his conversation with Lala.[41]

Plaintiffs bring claims of breach of contract, breach of duty of good faith and fair dealing,

---

[34] *Id.*

[35] *Id.* at 7–8.

[36] *Id.* at 10–11.

[37] *Id.* at 8.

[38] *Id.* at 12.

[39] *Id.*

[40] *Id.*

[41] *Id.*

and fraud under Texas law.[42] Plaintiffs further claim that Defendants violated the Texas Deceptive Trade Practices Act ("DTPA").[43]

## B.    Procedural Background

On March 12, 2021, Plaintiffs filed their Complaint in this Court based on diversity jurisdiction.[44] On March 23, 2021, Plaintiffs filed an Amended Complaint.[45] On July 2, 2021, Plaintiffs filed a Second Amended Complaint.[46] On September 6, 2022, Defendants filed the instant motion for summary judgment.[47] Plaintiffs filed a memorandum in opposition of the motion on September 14, 2022, and a supplemental opposition on September 19, 2022.[48] On September 19, 2022, Defendants filed a reply in support of their motion for summary judgment.[49]

## II. Parties' Arguments

### A.    Defendants' Arguments in Support of the Motion for Summary Judgment

In support of their motion, Defendants raise two arguments. First, Defendants contend that Plaintiffs Guidry, Dixie, and Guidry Holdings were not parties to "the ultimate transaction at issue," the sale of the 2021 Boat.[50] Defendants aver that this Court should dismiss these parties'

---

[42] *Id.* at 13–18.

[43] *Id.* at 19.

[44] Rec. Doc. 1.

[45] Rec. Doc. 5.

[46] Rec. Doc. 16.

[47] Rec. Doc. 52.

[48] Rec. Docs. 55, 57. Plaintiffs state that the supplemental opposition "substitute[s] and wholly replace[s] Plaintiffs' Original Opposition. Rec. Doc. 57 at 3. Accordingly, the Court considers only the supplemental opposition.

[49] Rec. Doc. 58.

[50] Rec. Doc. 52-2 at 1–2.

claims because they "did not purchase a boat from Defendants, and they have no standing to bring this suit."[51] Defendants further argue that "Guidry admits that there is no evidence that Plaintiff GHL was party to any agreement to buy the [2021 Boat] at dealer cost, which is the purported arrangement upon which all allegations in this matter are based."[52] Therefore, Defendants contend that summary judgment is proper because only GHL has standing to sue and Plaintiffs admit that GHL was not a party to the oral agreement for a discount.[53]

Second, Defendants argue that the Texas statute of frauds renders any oral agreement the parties entered into unenforceable.[54] Defendants assert that under the Texas statute of frauds, "a contract that is not [to] be performed within one year is unenforceable unless it is reduced to writing and signed by the person to be charged."[55] Defendants argue that "the sale of [the 2021 Boat] was not to be performed within one year of an agreement made in late 2017/early 2018."[56] Defendants aver that a transaction executed in Spring 2020, around two years after the alleged oral arrangement occurred, is "unenforceable unless it was reduced to writing and signed by Connell."[57] Therefore, Defendants contend that any oral agreement between the parties governing the sale of the 2021 Boat at dealer invoice cost is unenforceable because it was not reduced to writing and Connell did not sign any writing.[58]

---

[51] *Id.* at 2

[52] *Id.* at 11–12.

[53] *Id.*

[54] *Id.* at 12.

[55] *Id.* at 2.

[56] *Id.* at 13.

[57] *Id.* at 2.

[58] *Id.* at 14.

### B.      *Plaintiffs' Arguments in Opposition to the Motion*

Plaintiffs raise two arguments in opposition to Defendants' motion. First, Plaintiffs argue that the oral agreement is enforceable because the partial performance exception to the Texas statute of frauds applies.[59] Plaintiffs aver that the "partial performance doctrine 'applies when refusal to enforce the agreement would operate as a virtual fraud because the party relying on the agreement suffered substantial detriment without a remedy absent enforcement, and the other party would reap an unearned benefit or windfall if permitted to plead the statute.'"[60] Plaintiffs allege that Guidry and Dixie performed their obligations under the agreement by selling two Entegra motorhomes at dealer invoice cost, a price substantially lower than retail.[61] Plaintiffs argue that Connell and Legend defrauded Guidry by sending "various documents, including fake factory invoices, that misrepresented the dealer invoice cost in amounts that exceeded the true factory dealer invoice price [of the 2021 Boat] by $85,000.00 to $100,000.00."[62] Ultimately, Plaintiffs argue that the partial performance exception applies because Connell and Legend reaped unearned benefits in purchasing the 2019 Entegra Motorhome at dealer invoice cost, "which was a minimum of $75,000.00 less than the retail price," and in profiting approximately $85,000.00 on the 2021 Boat sale.[63]

Second, Plaintiffs argue that this Court must deny Defendants' motion because

---

[59] Rec. Doc. 57 at 12.

[60] *Id.* (quoting *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1129 n.25 (5th Cir. 1993) (internal citations omitted)).

[61] *Id.* at 13.

[62] *Id.* at 14.

[63] *Id.* at 14–15.

Defendants failed to address Plaintiff's claims of fraud and violations of the DTPA.[64] Plaintiffs contend that this Court's granting of Defendants' motion would not dispose of their DTPA claims because they are independent of any breach of contract claims.[65] As such, Plaintiffs argue that Defendants' motion for summary judgment fails because their DTPA claims are independent from the breach of contract action and the motion does not address their DTPA claims.[66]

## C.   *Defendants' Reply Memorandum in Support of Motion for Summary Judgment*

Defendants raise two arguments in their reply memorandum in support of their motion. First, Defendants argue that the partial performance exception does not apply to the alleged agreement between Guidry and Connell.[67] Defendants further argue that the doctrine of partial performance requires a party to provide "strong evidence establishing the existence of an agreement and its terms."[68] Defendants contend that "[t]he acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced."[69] Defendants assert that Plaintiff has not proved that the "purpose behind the conveyance of the [2020 Entegra] motorhome is that [the 2021 Boat] would be sold at dealer cost."[70] Therefore, Defendants argue that they are entitled to summary judgment because "Plaintiffs have presented no evidence to

---

[64] *Id.* at 15.

[65] *Id.*

[66] *Id.* at 21.

[67] Rec. Doc. 58 at 3.

[68] *Id.*

[69] *Id.* at 4 (quoting *Exxon Corp. v. Breezevale Ltd.*, 82. S.W.3d 429, 439–40 (Tex. App. 2002)) (internal quotations omitted).

[70] *Id.* at 5.

establish a genuine issue of fact regarding the applicability of the partial performance exception to the statute of frauds."[71]

Second, Defendants argue that "[P]laintiffs own pleadings establish that all their causes of actions [sic] . . . derive from Defendants' purported breach of an unenforceable contract."[72] Defendants aver that Plaintiffs' cause of action for breach of the covenant of good faith and fair dealing requires a finding of some enforceable agreement encompassing the sale of the 2021 Boat at the factory dealer cost.[73] Defendants assert that Plaintiffs' fraud claims "arise from the false claim that Connell 'intended to induce [Guidry] to, individually or through his companies, pay more" than the dealer invoice cost for the 2021 Boat.[74] With respect to the DTPA claims, Defendants contend that the "only deceitful conduct Plaintiffs allege is Defendants' purported violation of an unenforceable oral agreement to sell the [2021 Boat]."[75]

Defendants further argue that the "sale price of 30% off of [sic] retail price was clearly communicated to Guidry" in the negotiations for the 2021 Boat transaction.[76] Therefore, Defendants argue that summary judgment is proper because Plaintiffs have failed to provide evidence to "each material detail" and "all essential elements" of the alleged oral agreement underlying each of their claims.[77]

---

[71] *Id.* at 6.

[72] *Id.* at 9.

[73] *Id.*

[74] *Id.* at 7 (quoting Rec. Doc. 57 at 17).

[75] *Id.* at 9.

[76] *Id.* at 8.

[77] *Id.* at 9.

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[78] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[79] All reasonable inferences are drawn in favor of the nonmoving party, however, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[80] If the whole record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[81] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[82]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[83] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense,

---

[78] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[79] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[80] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[81] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[82] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[83] *Celotex*, 477 U.S. at 323.

or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[84] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports the nonmoving party's claims.[85] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[86] Instead, the nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[87]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[88] Instead, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

## IV. Analysis

Defendants raise two arguments in the instant motion. First, Defendants contend that

---

[84] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[85] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[86] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).

[87] *Id.*; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[88] *Little*, 37 F.3d at 1075.

Plaintiffs Guidry, Dixie, and Guidry Holdings do not have standing to sue because they were not parties to "the ultimate transaction at issue," the sale of the 2021 Boat.[89] Second, Defendants argue that the Texas statute of frauds renders any oral agreement the parties entered into unenforceable.[90] Plaintiffs raise two arguments in opposition to Defendants' motion. First, Plaintiffs argue that the oral agreement is enforceable because the partial performance exception to the Texas statute of frauds applies.[91] Second, Plaintiffs argue that this Court must deny Defendants' motion because Defendants failed to address Plaintiff's claims of fraud and violations of the DTPA.[92] The Court addresses the statute of frauds issue before proceeding to the standing issue.

A.    *Whether the Partial Performance Exception to the Statute of Frauds Applies to the Parties' Alleged Agreement*

The statute of frauds "concerns problems of proof and exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing and signed by the parties."[93] The statute of frauds operates as an affirmative defense in a breach of contract action and "renders a contract that falls within its purview unenforceable."[94] The statute of frauds applies to agreements which are "not to be performed within one year from the date of making the agreement."[95] When a promise or agreement cannot be completed within a year either by its

---

[89] Rec. Doc. 52-2 at 1–2.

[90] *Id.* at 12.

[91] Rec. Doc. 57 at 12.

[92] *Id.* at 15.

[93] *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App. 2012) (citing *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001)).

[94] *Id.*

[95] Tex. Bus. & Com. Code § 26.01(b)(6).

terms or by the nature of the required acts, the agreement is not enforceable unless it is in writing and signed by the person to be charged with the agreement.[96] If it is possible for the agreement to be performed within one year, it is not within the statute of frauds.[97]

The Texas Supreme Court has determined that the question of whether an agreement falls within the statute of frauds is a question of law.[98] However, the question of whether any exception to the application of the statute of frauds applies is a question of fact.[99] "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud."[100] In order for the exception to apply, the partial performance undertaken by the party "must be 'unequivocally referable' to the agreement" such that "the [partial performance] 'must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced.'"[101]

The parties dispute whether the sale of the 2021 Boat incorporated the terms of the prior oral arrangement to sell at dealer invoice cost. Defendants assert that the terms of the oral arrangement do not govern the 2021 Boat transaction because the statute of frauds bars its enforcement and the build sheets and negotiations surrounding the 2021 Boat reflect a smaller discount.[102] The record before this Court shows that the agreement could not be performed within

---

[96] *Id.* at § 26.01(a).

[97] *Holloway*, 380 S.W.3d at 320.

[98] *Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961).

[99] *Holloway*, 380 S.W.3d at 321.

[100] *Breezevale Ltd.*, 82 S.W.3d at 439.

[101] *Id.* at 439–40.

[102] Rec. Doc. 52-2 at 1–2.

15

one year of the date it was made because the parties reached the agreement in late 2017 to early 2018 and the negotiations for the 2021 Boat commenced approximately two years later.[103] Therefore, the Court finds that the agreement falls within the ambit of the statute of frauds and is not enforceable absent the application of an exception. Accordingly, the Court must determine whether there is a genuine dispute of material fact as to whether the partial performance exception to the statute of frauds applies.

In their motion, Defendants cite *Biko v. Siemens Corp.* to argue that Plaintiffs must present evidence of a signed written agreement or memorandum which contains "every material detail and . . . all essential elements" to avoid the application of the statute of frauds.[104] In *Biko*, current and former employees of a corporation sued their employer alleging that management mispresented information regarding a post-merger employee retention fund.[105] The trial court granted summary judgment for the corporation and found that the alleged oral agreement and representations regarding a multi-year plan to distribute employee retention funds fell within the statute of frauds.[106] The appellate court declined to apply the partial performance exception because it found that the rendition of services already compensated under salary was an insufficient ground to take the alleged agreement "out of the statute of frauds."[107] *Biko* is factually inapposite as the instant case does not involve payment of a salary.

Defendants additionally rely on *Winkenhower v. Smith* in support of their motion for

---

[103] *See* Rec. Doc. 52–1.

[104] Rec. Doc. 52-2 at 12–13.

[105] *Biko v. Siemens Corp.*, 246 S.W.3d 148, 151 (Tex. App. 2007).

[106] *Id.*

[107] *Id.* at 161.

summary judgment.[108] In *Winkenhower*, the plaintiff-appellant sued his sibling's estate to enforce an oral agreement between the siblings in which they pledged to sign a warranty deed and surrender their half-interests in the family ranch in exchange for distributions from a family trust.[109] In opposition to a motion for summary judgment, the plaintiff presented the signed warranty deed to argue that a partial performance had occurred.[110] The court determined that the signed warranty deed did not raise a fact issue on partial performance and summary judgment was proper because the deed listed the "purpose of the transfer [was] 'in lieu of debt,' and d[id] not reference the family ranch or any trust to be created to hold the ranch."[111]

This case is easily distinguishable from *Winkenhower*. Here, Plaintiffs point to prior emails and messages between Connell and Guidry from 2018 to 2020, which evidence that the first three transactions would be sold at the dealer invoice cost.[112] Specifically, Plaintiffs point out that Connell emailed Guidry on April 23, 2019, to request that the dealer invoice cost be applied to the 2020 Entegra transaction.[113] Plaintiffs argue that their performance in the 2020 Entegra transaction serves as the partial performance to remove this oral agreement from the statute of frauds.[114] Consequently, the Court finds that Plaintiffs cite evidence in the record

---

[108] Rec. Doc. 58 at 4–5 (citing *Winkenhower*, Case No. 04-15-00077, 2015 Tex. App. LEXIS 11566, at *15 (Tex. App. Nov. 10, 2015)).

[109] *Winkenhower*, 2015 Tex. App. LEXIS 11566 at *2–5.

[110] *Id.* at *5.

[111] *Id.* at *16.

[112] Rec. Doc. 57 at 3–9.

[113] Rec. Doc. 57-7 at 1–2.

[114] Rec. Doc. 57 at 14–15.

beyond the one vague warranty deed cited by the plaintiff in *Winkenhower*.[115]

Defendants argue that Plaintiffs have failed to raise "a genuine issue of fact sufficient to establish a 'partial performance' exception to the Texas statute of frauds."[116] Defendants point out that "the March 6, 2018 email which Plaintiffs contend 'memorializes' the alleged agreement between Guidry and Connell, does not set forth the terms of the agreement, and only contemplates" the sale of the 2018 Boat.[117] Defendants further argue that the April 23, 2019 email from Connell to Guidry in which Connell asked if he could purchase the 2020 Entegra at dealer invoice cost does not establish that the purpose behind the conveyance of the 2020 Entegra was that the 2021 Boat would be sold at dealer invoice cost.[118] Defendants aver that the April 23, 2019 email "does not refer to a second boat purchase by any Plaintiff for any price" and that the 30% discount applied to the 2021 Boat "was clearly communicated to Guidry, who never questioned that discount."[119]

Plaintiffs allege that Legend and Connell "perpetrated a fraud upon" Guidry in the form of falsifying factory invoices for the 2021 Boat transaction which misrepresented the dealer invoice cost.[120] Plaintiffs further allege that the true factory dealer invoice revealing the cost was created at some point in September 2020, and that Defendants actively concealed the invoice.[121] Plaintiffs argue that there are substantial inconsistencies between the invoices received in

---

[115] *See* Rec. Doc. 55–2.

[116] Rec. Doc. 58 at 5.

[117] *Id.*

[118] *Id.*

[119] *Id.* at 6.

[120] Rec. Doc. 57 at 14.

[121] *Id.*; *see also* Rec. Doc. 57-4.

November 2020 for the 2021 Boat and the invoices for the prior 2018 Boat transaction.[122] Plaintiffs point to the deposition of Geoff Tomlinson, a representative of the manufacturer of the 2021 Boat, as support to demonstrate that the true factory invoice for the 2021 Boat is $609,662.00, a substantially lower price than that reflected in the invoices Defendants sent Plaintiffs.[123]

Plaintiffs contend that Dixie and Guidry authorized the sale of the 2020 Entegra motorhome at the dealer invoice cost based on the misrepresentations that Connell and Legend would sell the 2021 Boat at the same rate.[124] Plaintiffs further aver that Guidry executed the purchase agreement for the 2021 Boat "trusting that any overpayment or underpayment above/below factory dealer invoice cost . . . would be reconciled later, as was done with the purchase of the [2018 Boat]."[125] Plaintiffs argue that "Texas law does not sanction [the] use of the Statute of Frauds to perpetuate a fraud when there is strong evidence establishing the existence of the agreement and its terms, the party acting in reliance . . . has suffered a substantial detriment for which he has no adequate remedy" while the other party would "reap an unearned benefit."[126] Plaintiffs allege that Defendants have received a windfall with respect to the profit on their 2021 Boat sale and larger discount on the 2020 Entegra purchase.[127]

This Court finds that a material dispute of fact exists whether the performance rendered

---

[122] Rec. Doc. 57 at 8–9; Rec. Doc. 57-4.

[123] Rec. Doc. 57-1 at 8.

[124] Rec. Doc. 57 at 13–14.

[125] Rec. Doc. 57-1 at 5.

[126] *Id.* (internal quotation omitted).

[127] *Id.* at 14.

by Plaintiffs in selling the 2020 Entegra motorhome to Defendants is "unequivocally referable to the agreement and corroborative of the fact" that a contract was made.[128] As such, it is for the jury to decide whether the evidence presented establishes that the partial performance exception to the statute of frauds applies. Therefore, Defendants are not entitled to summary judgment on the grounds of the statute of frauds.

## B.      *Whether Guidry, GHL, Dixie, and Guidry Holdings Should be Dismissed for Lack of Standing*

Defendants assert that Plaintiffs Guidry, Dixie, and Guidry Holdings do not have standing to sue because they were not parties to "the ultimate transaction at issue," the sale of the 2021 Boat.[129] Defendants cite authority demonstrating that a party may only sue on a contract if they are a party to the contract, are in privity of contract, or a third-party beneficiary.[130] However, beyond asserting this general principle of law, Defendants cite no authority directing this Court to grant summary judgment where Plaintiffs proceed on other causes of action independent of the existence of an enforceable contract. This Court finds that significant material facts are in dispute as to the standing of the parties involved in each of the four transactions allegedly connected to the same oral agreement. Therefore, Defendants are not entitled to summary judgment on the Plaintiffs' purported lack of standing to sue.

## C.      *Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Fraud and DTPA Claims*

Defendants assert that summary judgment is proper because Plaintiffs' causes of action "all depend upon the unenforceable oral contract allegedly entered into by Guidry and Connell in

---

[128] *Biko*, 246 S.W.3d at 161.

[129] Rec. Doc. 52-2 at 1–2.

[130] *Id.* at 11 n.50 (quoting *Sojitz Energy Venture, Inc. v. Union Oil Co. of Cal.*, 394 F. Supp. 3d 687, 710 (S.D. Tex. 2019) (citations omitted)).

late 2017/early 2018."[131] Defendants argue that Plaintiffs' causes of action for breach of the covenant of good faith and fair dealing, fraud, and violations of the DTPA all rely on the Defendants alleged breach of an unenforceable oral contract.[132] However, Defendants cite no case law to support this proposition.

Plaintiffs argue that Defendants' failure to address the DPTA claim is fatal to their motion for summary judgment.[133] The Texas Supreme Court stated in *Weitzel v. Barnes* that deceptive misrepresentations "are not only admissible but can serve as the basis of a DTPA action."[134] In *Weitzel*, the plaintiffs sued the seller of the remodeled home, alleging violations of the DTPA based on oral representations regarding the plumbing and air conditioning systems.[135] The plaintiffs did not allege a breach of contract but rather sought damages exclusively under the DTPA for the alleged oral misrepresentations made by the seller.[136] The court explained that "[t]he oral misrepresentations, which were made both before and after the execution of the agreement, constitute the basis of this cause of action, so traditional contractual notions do not apply."[137]

Here, Plaintiffs allege that Defendants violated the DTPA in "the use or employment of false, misleading, or deceptive acts or practices . . . that were detrimentally relied upon by

---

[131] Rec. Doc. 58 at 7.

[132] *Id.* at 8–9.

[133] Rec. Doc. 57 at 18.

[134] 691 S.W.2d 598, 600 (Tex. 1985).

[135] *Id.* at 599.

[136] *Id.* at 600.

[137] *Id.*

Plaintiff[s]."[138] Under Texas law, the "duty not to make misrepresentations or to make certain disclosures during the contract formation stage is imposed by law independent of a contract and thus, is actionable under the DTPA."[139] Additionally, Texas law clearly indicates that the DTPA provides an independent cause of action when a breach of the duty to refrain from making deceitful misrepresentations causes injury to a consumer.[140] Therefore, this Court finds that Defendants are not entitled to summary judgment based on the theory that Plaintiffs' DTPA claims arise from an alleged unenforceable oral contract.

## V. Conclusion

For the foregoing reasons, there are material facts in dispute as to the existence of an enforceable contract between the parties with respect to the sale of the 2021 Boat. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion for Summary Judgment"[141] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___17th___ day of January, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[138] Rec. Doc. 16 at 19.

[139] *Howell Crude Oil Co. v. Donna Refinery Partners*, 928 S.W.2d 100, 109 (Tex. App. 1996).

[140] *Nottingham v. Gen. Am. Comm'ns Corp.*, 811 F.2d 873, 879–80 (5th Cir. 1987).

[141] Rec. Doc. 52.