UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GHL HOLDINGS LLC et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 21-516** |
| **SPEED BOATS OF TEXAS, LP D/B/A LEGEND MARINE GROUP, et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendants NT Manufacturing, LLC d/b/a Nor-Tech Hi-Performance Boats ("Nor-Tech") and Geoff Tomlinson's ("Tomlinson") (collectively "Moving Defendants") Motion to Dismiss for Failure to State a Claim.[1] Moving Defendants argue that the allegations in the Third Amended Complaint are insufficient to sustain claims against them under the heightened pleading standard of Federal Rule of Civil Procedure 9.[2] Plaintiffs GHL Holding, LLC ("GHL"), Dixie Motors, LLC, ("Dixie"), Stephen L. Guidry Jr. ("Guidry"), and Gregory A. Lala ("Lala") (collectively "Plaintiffs") argue that the allegations are sufficient to survive the instant Motion to Dismiss, or alternatively, request the opportunity to amend the Complaint to cure any deficiencies.[3] Considering the Complaint, the motion and opposition, the record, the applicable law, and Plaintiffs' concession that the Texas Deceptive Trade Practices Act ("DTPA") does not apply, the Court grants the motion to the extent it seeks dismissal of Plaintiff's DTPA claim and denies it in all other respects.

---

[1] Rec. Doc. 80.

[2] *Id.* at 2.

[3] Rec. Doc. 89 at 2.

1

## I. Background

*A.   Factual Background*

Plaintiff Stephen L. Guidry, Jr., the President and Chief Operating Officer of Dixie Motors, LLC, engaged in the business of retail sales and services of recreational vehicles in Hammond, Louisiana.[4] Defendant Greg Connell ("Connell"), the owner and manager of Speed Boats of Texas, LP, d/b/a Legend Marine Group ("Legend Marine Group"), engaged in the business of retail sales and service of marine craft in Carrollton, Texas.[5]

Plaintiffs allege that in September of 2017, Guidry expressed an interest in purchasing a boat from Legend Marine Group.[6] Connell also expressed an interest in purchasing a motorhome from Dixie Motors, LLC, owned by Guidry.[7] Guidry and Connell agreed to sell each other, and/or their designated companies, boats and recreational vehicles at factory dealer costs, in other words, the factory invoice amount charged to the dealer, including any applicable standard or special sales discounts allowed to the dealer by the respective manufacturers of the products.[8] Plaintiffs submit that this also meant, in essence, neither party was to make a sales profit on either transaction.[9] The parties entered into four transactions involving the following: (1) 2018 390 Sport Open Boat Transaction; (2) 2018 Entegra Cornerstone Model 45W Motorhome Transaction; (3) 2019 Entegra Cornerstone Model 45W Motorhome Transaction; (4) 2021 290 Sport Open Boat Transaction.[10]

---

[4] Rec. Doc. 1 at 3.

[5] *Id.*

[6] Rec. Doc. 71 at 4.

[7] *Id.*

[8] Rec. Doc. 1 at 3; Rec Doc 71 at 4.

[9] Rec. Doc. 1 at 3.

[10] Rec. Doc. 71 at 4–8.

Defendant, Legend Marine Group, sold at factory dealer invoice cost a 2018 390 Sport Open boat, manufactured by Defendant, Nor-Tech Hi Performance Boats, to Plaintiff GHL Holdings, LLC, solely owned by Plaintiff Guidry.[11] The invoice from Nor-Tech reflects a price of $219,632.00 for the 2018 390 Sport Open boat.[12]

Plaintiff Dixie Motors, LLC sold a 2018 Entegra Cornerstone Model 45W Motorhome, manufactured by Jayco, Inc., to Defendant Land and Water Motorsports, LLC, solely owned by Defendant Connell in the amount of $457,530.00.[13] Plaintiffs contend that Guidry supplied the actual final factory invoice from Jayco Inc. to Connell.[14]

In 2019, Connell approached Guidry about purchasing another motorhome from Dixie Motors, LLC, and Guidry expressed an interest in buying another boat from Legend Marine Group.[15] Connell and Guidry, again, mutually agreed that they would sell each other the designated products from their respective companies at dealer's cost.[16] Pursuant to the foregoing agreement, Plaintiff Dixie Motors, LLC sold a 2019 Entegra Cornerstone Model 45W Motorhome, manufactured by Jayco, Inc. to Defendant Land and Water Motorsports, LLC ("Land and Water"), solely owned by Defendant Connell in the amount of $466,330.00.[17] Plaintiffs allege that Guidry supplied the actual final factory invoice from Jayco, Inc. to Connell.

---

[11] Rec. Doc. 71 at 6.

[12] Rec. Doc. 71-3.

[13] Rec. Doc. 71 at 6.

[14] *Id.*

[15] *Id.* at 7.

[16] *Id.*

[17] *Id.*

Pursuant to the aforementioned agreement, Guidry agreed to purchase a 2021 390 Open Boat, manufactured by Defendant Nor-Tech, through GHL Holdings, solely owned by Guidry.[18] On May 15, 2020, Plaintiffs made a $20,000.00 deposit towards the purchase of the 2021 390 Open Boat.[19] On September 11, 2020, Plaintiffs made a final payment of $676,512.24 towards the purchase of the 2021 390 Open Boat.[20] In October 2020, Guidry took delivery of the 2021 390 Sport Open Boat, and requested a copy of the final manufacturer' invoice.[21] Plaintiffs allege that the requests were ignored until November 9, 2020, when Plaintiffs received an invoice from Defendant Connell prepared by Defendants Geoff Tomlinson and Nor-Tech.[22] Plaintiff Guidry alleges that there were discrepancies in the invoice and expressed his concern via email on November 10, 2020.[23] On November 11, 2020, Plaintiff Guidry received another invoice from Defendant Connell via email, and Plaintiffs allege that the documents were modified.[24]

In April or May of 2021, Plaintiffs allege that Defendant Connell admitted to an associate of Plaintiff Guidry that the invoices submitted did not reflect the true factory dealer cost of the 2021 390 Sport Open Boat, and that Defendant Connell did make a profit contrary to their agreement.[25]

---

[18] *Id.* at 8.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 9–11.

[24] *Id.* at 11–13.

[25] *Id.* at 13.

*B.     Procedural Background*

On March 12, 2021, Plaintiffs GHL Holdings, LLC and Stephen L. Guidry, Jr. filed a Complaint against Defendants Legend Marine Group and Greg Connell.[26] On March 23, 2021, Plaintiffs filed an Amended Complaint.[27] On April 23, 2021, Defendants Speed Boats of Texas, LP, d/b/a Legend Marine Group and Greg Connell filed a Motion to Dismiss.[28] The Court denied Defendants' Motion to Dismiss as moot and granted Plaintiffs leave to amend the complaint.[29] On July 7, 2021, Plaintiffs filed a Second Amended Complaint, adding Land and Water as a defendant.[30]

On September 6, 2022, Defendants Connell, Land and Water, and Legend Marine Group filed a Motion for Summary Judgment, which the Court denied because it found that there were genuine issues of material fact in dispute.[31] On June 14, 2023 Plaintiffs filed the Third Amended Complaint, which added Nor-Tech and Tomlinson as Defendants.[32] In the Third Amended Complaint, Plaintiffs allege three causes of action against Moving Defendants: fraud by intentional misrepresentation, fraud by concealment, and violations of the DTPA.[33]

---

[26] Rec. Doc. 1.

[27] Rec. Doc. 5.

[28] Rec. Doc. 6.

[29] Rec. Doc. 15.

[30] Rec. Doc. 16.

[31] Rec. Doc. 52; Rec. Doc. 68.

[32] Rec. Doc. 71.

[33] *Id*. at 16–17, 19.

On August 18, 2023, Moving Defendants Nor-Tech and Tomlinson filed the instant Motion to Dismiss for Failure to State a Cause of Action.[34] On September 26, 2023, Plaintiffs filed an opposition to the motion.[35]

## II. Parties' Arguments

### A.   *Moving Defendants' Arguments in Support of Motion to Dismiss*

Moving Defendants argue that, under the heightened pleading standard for fraud claims pursuant to Federal Rule of Civil Procedure 9(b), Plaintiffs do not sufficiently "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[36] Moving Defendants assert that the Third Amended Complaint is vague because it groups all Defendants together and does not adequately specify which claims are being brought against each Defendant.[37] Moving Defendants further argue that Plaintiffs do not adequately define the actions each Defendant is alleged to have taken to commit each requisite element of the fraud claims.[38]

Further, Moving Defendants argue that the allegations regarding the "actual factory dealer invoice" are vague.[39] First, Moving Defendants argue that the terminology used by Plaintiffs is inconsistent and that each term has a different meaning within the industry lexicon.[40] Specifically, Moving Defendants argue that "final manufacturers invoice," "actual factory dealer," and "final

---

[34] Rec. Doc. 80.

[35] Rec. Doc. 89.

[36] Rec. Doc. 80-1 at 4 (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010)).

[37] Rec. Doc. 80-1 at 2–3; 4.

[38] *Id.*

[39] *Id.* at 4–5.

[40] *Id.* at 5.

6

invoice" all mean different things, and Plaintiffs failed to specify the contents of the information which is purported to be false, the specific person who is said to have made the false statements, and how or why they are fraudulent.[41]

Finally, Moving Defendants argue that Plaintiffs' claims pursuant to the Texas Deceptive Trade Practices Act ("DTPA") are untimely, the alleged deceptive trade practice is not properly identified, and the DTPA is not applicable to the alleged transaction in this case.[42]

### B. *Plaintiffs' Arguments in Opposition to Motion to Dismiss*

In opposition, Plaintiffs first concede that they have no cause of action pursuant to DTPA because the transaction that is the subject of Plaintiffs' claims exceed $500,000.00.[43]

Plaintiffs argue that their allegations are sufficient regarding the claims for fraud through intentional misrepresentation and fraud through intentional concealment.[44] Plaintiffs submit that the Third Amended Complaint contains allegations which clearly and with particularity "specify the statements contended to be fraudulent, identify the speaker, [and] state when and where the statements were made[.]"[45] Plaintiffs aver that they adequately explain why the email and alleged fake invoices were fraudulent.[46]

Alternatively, Plaintiffs request that the Court to allow them to amend the Third Amended Complaint to cure any deficiencies.[47]

---

[41] *Id.*

[42] *Id.* at 7.

[43] Rec. Doc. 89 at 1.

[44] *Id.* at 2.

[45] *Id.* at 4.

[46] *Id.* at 4–6.

[47] Rec. Doc. 89 at 8.

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[48] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[49] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[50] "Factual allegations must be enough to raise a right to relief above the speculative level."[51] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[52]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[53] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[54] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[55] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[56] The complaint need not contain detailed factual allegations, but it

---

[48] Fed. R. Civ. P. 12(b)(6).

[49] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[51] *Twombly*, 550 U.S. at 555.

[52] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[53] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[54] *Iqbal*, 556 U.S. at 678–79.

[55] *Id.* at 679.

[56] *Id.* at 678.

must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[57] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[58] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[59] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[60]

Federal Rule 9(b) imposes a heightened level of pleading for fraud claims which requires a party alleging a common law fraud claim to plead the surrounding circumstances with particularity.[61] In the Fifth Circuit, this requires the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[62]

## IV. Analysis

### A. *Plaintiffs' Claims Pursuant to Texas Deceptive Trade Practices Act ("DTPA")*

Moving Defendants argue that Plaintiffs failed to state a claim pursuant to DTPA because Plaintiffs claims are untimely, the alleged deceptive trade practice is not properly identified, and the DTPA is not applicable to the alleged transaction in this case.[63] In opposition, Plaintiffs

---

[57] *Id.*

[58] *Id.*

[59] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[60] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[61] Fed. R. Civ. P. 9(b).

[62] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010).

[63] Rec. Doc. 80-1 at 7.

9

concede that the subject of Plaintiffs' claims exceeded $500,000.00, and therefore, Plaintiffs have no cause of action under DTPA.[64] As such, the Court dismisses Plaintiffs' claims against Moving Defendants Nor-Tech and Tomlinson brought pursuant to DTPA.

### B.   *Plaintiffs' Claims for Fraud Through Intentional Misrepresentation and Concealment*

Moving Defendants argue that the Third Amended Complaint groups together "Defendants" while the factual background refers only to a single purported act by Nor-Tech and/or Tomlinson—preparing and sending the November 9, 2020 invoice to Defendant Legend Marine Group.[65] Moving Defendants contend that there is no allegation that Nor-Tech and/or Tomlinson made the alleged misrepresentation to Plaintiffs or that Nor-Tech and/or Tomlinson obtained anything as a result of sending or preparing the invoice.[66] Moving Defendants aver that Plaintiffs fail to state with specificity the manner or contents of the information Nor-Tech and/or Tomlinson provided in the invoice, which was purportedly false or a misrepresentation.[67] Moving Defendants argue that Plaintiffs fail to specify what facts were omitted by Nor-Tech and/or Tomlinson with the intent to deceive, defraud, or induce Plaintiffs.[68]

As stated above, Federal Rule of Civil Procedure 9(b) imposes a heightened level of pleading for fraud claims, which requires a party alleging a common law fraud claim to plead the surrounding circumstances with particularity.[69] In the Fifth Circuit, this requires the plaintiff to

---

[64] Rec. Doc. 89 at 1.

[65] Rec. Doc. 80-1 at 4.

[66] *Id.*

[67] *Id.* at 5.

[68] *Id.* at 6.

[69] Fed. R. Civ. P. 9(b).

"specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[70]

The parties agree that Texas law applies to this case. Plaintiffs bring claims against Nor-Tech and Tomlinson for intentional misrepresentation and concealment. Under Texas law, the elements of intentional misrepresentation are: (1) the defendant made a material misrepresentation that was false; (2) the defendant knew that the representation was false or he made it recklessly without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied on the representation and thereby suffered injury.[71] The elements of a fraudulent concealment claim are: (1) the defendant concealed or failed to disclose a material fact within the knowledge of the defendant; (2) the defendant knew that the plaintiff was ignorant of the fact and did not have an equal opportunity to discover the truth; (3) the defendant intended to induce the plaintiff to take some action by concealing or failing to disclose the fact; and (4) the plaintiff suffered injury as a result of acting without knowledge of the undisclosed fact.[72] Claims of fraud by omission or misrepresentation do not require the defendant to obtain a benefit from the allegedly fraudulent behavior.[73]

---

[70] *Sullivan*, 600 F.3d at 551.

[71] *Rio Grande Royalty Co. Inc. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

[72] *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 858 (E.D. Tex. 2004), *aff'd*, 133 F. App'x 944 (5th Cir. 2005) (internal citations omitted).

[73] *Plastic Specialties, Inc. v. JPMorgan Chase Bank, N.A.*, 476 F. Supp. 3d 523, 530 (W.D. Tex. 2020) (citing *Rio Grande Royalty*, 620 F.3d at 468). In an unpublished opinion from 2004, the Fifth Circuit described the heightened Rule 9(b) pleading standard as requiring the plaintiff to identify "the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 667 (5th Cir. 2004). However, the Court follows the recitation of the standard set forth in a 2010 published opinion, because the instant claims do not require that the defendant obtain a benefit. *See Sullivan*, 600 F.3d at 551 (the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.").

In the "facts" section of the Third Amended Complaint, Plaintiffs state that Connell sent Guidry an invoice "dated November 9, 2020, received from and prepared by the Defendants, Geoff Tomlinson and Nor-Tech [] and in concert and conspiracy with Defendants Greg Connell and Legend Marine Group[.]"[74] Plaintiffs then include an email dated November 10, 2020, sent from Guidry to Connell, Tomlinson, and a representative from Nor-Tech pointing out discrepancies in the November 9, 2020 invoice and the prior April 11, 2018 invoice and alleging that the invoice was modified.[75] The November 10, 2020 email from Guidry states, in part:

> All of the foregoing leads me to believe that what you sent me was essentially a "confirming order" that was created (or modified) yesterday, and portrayed by one or both of you to be a Final Invoice, which it is not. It is unacceptable. I provided Greg with "manufacturer's final invoices" for both RVs he purchased from me – see attached. I trust that the April 2018 invoice was equivalent to that, but I have no faith that the 11/9/2020 invoice reflects the real price paid for my boat by Legend to Nor-Tech. All parties know that Greg Connell and Stephen Guidry had an agreement that both parties would pay dealer invoice for motorhomes and boats. I am giving you until noon tomorrow (November 11, 2020 at 12:00 p.m. CST) to send me the certified, true final factory invoice for this boat.[76]

Plaintiffs further allege that on November 11, 2020, Connell sent Guidry another invoice dated November 11, 2020.[77] Plaintiffs included an email dated November 11, 2020, sent from Guidry to Connell, Tomlinson, and a representative from Nor-Tech, again, alleging that the invoice was modified and that it is Guidry's belief that the figures do not accurately reflect the price paid to the manufacturer.[78] The November 11, 2020 email from Guidry states:

> [T]his document was created by "geofft" on 11/10/2020 at 4:11:50 p.m. and modified again on 11/11/2020 at 11:37:02 a.m. How am I supposed to believe this was the actual, final manufacturer's invoice when it was created yesterday? Geoff,

---

[74] Rec. Doc 71 at 9.

[75] *Id.* at 10–11.

[76] *Id.* at 11.

[77] *Id.*

[78] *Id.* at 12.

> if this problem is between me and Legend, why are you still creating and modifying invoices? Why am I still getting "modifiable" .pdfs? This looks like an attempt to fabricate another document to simply "fix" my concerns raised yesterday. Where's the actual final invoice that should have been completed (and dated) weeks ago? Why can't you just provide it to me?
>
> It doesn't change my mind that these figures do not accurately reflect what Legend paid Nor-Tech for this boat. Let me ask this another way - Will Nor-Tech be willing to sign an affidavit that the figures as stated on this invoice are true, accurate and complete?[79]

Under the "Causes of Action" section of the Third Amended Complaint, Plaintiffs state only "Defendants" or "Greg Connell Defendants" when referring to the alleged fraud through misrepresentation and concealment without specifically identifying which Defendant committed the allege fraud.[80] However, when read together with the "Facts" section of the Third Amended Complaint, the Court finds that Plaintiffs have included sufficient factual allegations regarding the "time, place, and contents"[81] of the alleged misrepresentations or concealments made by Tomlinson, who is alleged to have been acting as an employee of Nor-Tech. Plaintiffs specify the statements they contend to be fraudulent (the factory dealer costs contained in the invoices), the identity of the persons making the statement (Tomlinson acting with Connell), and when and where the statements were made (by email on November 9 and 11, 2020).[82] Plaintiffs also explain why they believed the statement to be fraudulent, because the invoices allegedly inflated the factory dealer price of the boat contrary to the agreement between Connell and Guidry.

---

[79] *Id.*

[80] *Id.* at 16–18.

[81] *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993).

[82] *Sullivan*, 600 F.3d at 551.

13

Moving Defendants argue that the terminology used by Plaintiffs is inconsistent and that each term has a different meaning within the industry lexicon.[83] Specifically, Moving Defendants argue that "final manufacturers invoice," "actual factory dealer," and "final invoice" all mean different things in the industry.[84] The heightened pleading standard does not require the level of specificity argued for by Moving Defendants. It is clear that Plaintiffs are alleging that Defendants worked in concert to conceal the amount Nor-Tech charged Legend Marine Group for the boat.

Moving Defendants also suggest that they cannot be held liable because they did not provide any invoices directly to Plaintiffs.[85] Plaintiffs allege that all parties knew of the deal between Connell and Guidry to pay the factory dealer cost of the boat,[86] but Tomlinson allegedly provided an invoice to Connell that did not reflect that price, allegedly acting with the intent to deceive Plaintiffs.[87] Therefore, the Court finds that Plaintiffs have satisfied the heightened pleading requirements for fraud under Rule 9(b).

---

[83] Rec. Doc. 80-1 at 5.

[84] *Id.*

[85] *Id.* at 6.

[86] Rec. Doc. 71 at 11.

[87] *Id.* at 16–17.

## V. Conclusion

For the reasons stated above, the Court grants the Motion to Dismiss in part and denies it in part. Accordingly,

**IT IS HEREBY ORDERED** that Moving Defendants' Motion to Dismiss for Failure to State a Cause of Action[88] is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** to the extent it seeks dismissal of the DTPA claim against Moving Defendants Nor-Tech and Tomlinson. The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this 2nd day of November, 2023.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[88] Rec. Doc. 80.